WILLIAM F. EDWARDS et al., appellants,

*v.*

EMELINE F. TOOKER, respondent.

E. was the owner of two tracts of land, the first containing fifteen acres and the second twenty-one. In 1867 E. gave to B. a bond and mortgage for $6,000, on the *first* tract. In 1868 B. recovered a judgment against E. on that bond. In July, 1875, that judgment was canceled of record. In 1878 the $6,000 mortgage was foreclosed, and in May, 1880, the defendants bought the first tract thereunder for $500. In February, 1879, the defendants had the cancellation of the judgment vacated, and it thereby became a lien on *both* tracts. In 1873 E.'s grantee of the *second* tract gave a mortgage of $4,000 thereon to W., who assigned it, in 1874, to complainant, who began to foreclose it in December, 1876, obtained a decree thereon in August, 1879, and purchased the *second* tract thereunder in September, 1880. Complainant never had notice of the existence of the judgment, nor of its re-instatement, until recently.—*Held,* that complainant could compel defendants, who admit that the *first* tract is worth $6,000, to release the *second* tract from the lien of the judgment, or else consent to a resale of the *first* tract, in order that complainants may have an opportunity of having the $6,000 bond and mortgage satisfied therefrom.

On appeal from a decree of the court of chancery, made upon the following opinion of Vice-Chancellor Bird, before whom the cause was heard:

The bill sets out the title to certain real estate which the complainant became the owner of by purchase at a sheriff's sale, by virtue of an execution upon a decree obtained on a bill filed to foreclose a mortgage, which property now seems to be encumbered by a judgment which, though recovered before the filing

of the bill in that case, had been, and was canceled of record at the time of filing the bill, but has since been re-instated, the court having declared the cancellation unauthorized. I will give so much of the statements respecting the title, as it appears in the bill, as to make clear the situation of the parties. One Doremus, owning a tract of land of about twenty-one acres, sold it to Charles P. Edwards and John S. Clark, by deed dated May 23d, 1856. On March 18th, 1857, Clark and wife conveyed all their interest therein to Edwards. It then passed, by several conveyances, from one to another, until the title reached Elizabeth Sloan, who, with her husband, executed a mortgage thereon for $4,465.87, dated December 31st, 1873, to Joseph S. Winston. This mortgage was recorded on March 24th, 1874. Winston assigned said mortgage to complainant.

On December 6th, 1876, the complainant in the present suit filed a bill to foreclose the said Winston mortgage so assigned to her. The person or persons interested in the judgment alluded to was and were not made parties. The judgment was then canceled on the record. It seems that all other parties in interest were made parties. A final decree was made August 21st, 1879, directing a sale of said mortgaged premises. A sale was effected September 15th, 1880, to the complainant in that suit, and now in this. After such purchase, and very recently, she learned of the lien of said judgment.

That judgment was given and obtained, canceled and re-instated at the times following : October 1st, 1867, said Charles P. Edwards and wife made a mortgage on another lot of land containing fifteen acres to Charles P. Bispham, to secure a bond for $6,000. July 14th, 1868, Bispham recovered a judgment on said bond in the Supreme Court for $12,000, the penalty of said bond ; the real amount due being $6,363.41. January 1st, 1869, Bispham assigned said mortgage and judgment to James Holmes.

On November 29th, 1870, said Charles P. Edwards and wife conveyed the said fifteen-acre tract to the Edwards Paper Company for $50,000, as expressed in the deed, subject to said last-named mortgage, the company assuming its payment. November

10th, 1873, said company conveyed to Samuel C. Edwards, a son of Charles, subject to the last-named mortgage, on which there was then due a balance of $1,950; which said Samuel assumed, and on the same day he conveyed the same property to his father, Charles P., subject to said $1,950, which Charles assumed to pay.

On July 26th, 1875, said judgment was canceled of record. This was before the complainant filed the bill to foreclose her mortgage on the twenty-one acre tract, which was November 6th, 1876.

On March 6th, 1878, Holmes filed a bill to foreclose said $6,000 mortgage, and a final decree was obtained in that suit July 18th, 1878. An execution was issued thereon February 7th, 1880, a sale made May 17th, 1880, to R. Wayne Parker, one of the defendants in this suit, for the sum of $500, but his bid was assigned to one John M. Phillips and John P. Edwards, trustees, to whom the deed was made and delivered.

On January 29th, 1879, during the pendency of the first foreclosure proceedings above named, and before sale in the last, said Holmes assigned his said bond and mortgage and the decree in said suit to said Parker for $2,738.64, and the assumption by him of the sheriff's fees, in trust for Mrs. V. R. Marie. It is charged that Mr. Parker, in purchasing said mortgage and decree, was acting for and in the interest of said John M. Phillips and Charles P. Edwards. He also purchased said judgment in Phillips's and Edwards's interest. Phillips held a second mortgage on said fifteen acres, dated November 11th, 1873.

But when Mr. Parker took said assignment of mortgage and decree he had not been informed of said judgment, but soon learned of it, and then procured an assignment thereof also to himself as trustee for Mrs. Marie.

The bill alleges that, at the time Mr. Parker took the assignment of said decree, the land covered by it was much more than ample security for all that was due thereon, which was $2,733.64 and sheriff's fees.

After said assignments of the decree and of the judgment, said Parker had the cancellation of said judgment set aside, and the judgment re-instated. This was done February 28th, 1879.

On the 21st of the next August the complainant in this suit obtained a final decree in her then pending foreclosure suit, under which she purchased the twenty-one acres on the 15th of September, 1880.

Because it was discovered that some of the fifteen-acre tract was located in Morris county, all the proceedings were amended at the instance of Mr. Parker, and another execution issued to a master, who made sale for $500, when it is alleged the property was well worth $10,000, and when it is also alleged it would have brought enough to satisfy the decree, interest and costs, had not all bidding been prevented by Mr. Parker, Mr. Phillips and Mr. Edwards. The sale was made to said Parker, and he immediately assigned his bid to Phillips and Edwards, trustees, and the master made a deed to them as trustees. This was May 17th, 1880. On the same day, Phillips and Edwards executed a declaration of trust, in which they declared that they held said property in trust for certain persons and purposes, setting forth the different purposes. On the same day said trustees gave a mortgage on said land to Mrs. Marie, to secure to her $3,000, also secured by said declaration of trust, and one to said Parker, as trustee for said John M. Phillips, for $6,800.

The complainant in this suit had no knowledge of any of these proceedings, nor had she any notice, nor was she a party to the suit, nor, as above stated, had she any knowledge of the existence of said judgment until recently.

The complainant insists that she is entitled to have said judgment canceled of record, or to have her land released therefrom, or to have said fifteen-acre tract resold, that she may bid thereon, so that said decree and judgment may be fully satisfied.

The answer of Mr. Parker shows that he was appointed trustee of V. R. Marie in 1875, under the will of Isaac B. Parker; that part of his duties was to lend moneys upon good mortgage security; that January 8th, 1879, William F. Edwards, son of Charles P. Edwards, deceased, and John M. Phillips agreed to lend them $3,000 on the said fifteen-acre tract; that he was then informed of the Holmes foreclosure proceedings, of the decree and the advertisements of sale; that he was also informed

that Phillips was the holder of a second mortgage, bearing date November 11th, 1873, which was pledged to a bank as a collateral; that this court advised a loan of $3,000 on the said fifteen acres by said defendant, as trustee upon first mortgage, but it was not loaned, the defendant taking an assignment of the Holmes decree and all securities, which assignment was to be held by him, first, for all sums advanced by him, and second, for the benefit of those named by Phillips and Edwards; that on January 29th, 1879, said Parker advanced to Holmes $2,738.64, the amount of his decree, when Phillips gave back a bond in the penalty of $5,000, to secure the payment of the said $2,738.64, and any other moneys he might advance; that he had learned before taking the assignment of said decree that a judgment had been obtained on said bond, of which judgment he also took an assignment.

The defendant says he then believed that the said fifteen acres were a good security for the amount due upon said decree and the advances made by him, subject only to the cloud on the title; that at the time the water-rights or privileges (being a mill-site) only extended to the middle of the stream; that he learned that Phillips had a mortgage (the one above mentioned) which covered other lands besides the land in the said decree named, but which was in another county, in which county, however, the said last-named mortgage had not been recorded; that as to said other lands, the said Phillips mortgage was subject to the said judgment against Edwards; and it was his duty to obtain for his *cestuis que trustent* by said judgment or otherwise, all the security he could; that he also then learned of the cancellation of said judgment, and that the cancellation was unauthorized, and that he procured the said cancellation to be vacated, and insists that the rights and obligations of the complainant in this suit were never changed, because of such cancellation; that he immediately took proceedings to secure any money advanced by him, and the money due Phillips, and the money due such persons as should be named by William F. Edwards, by causing an amendment of said decree, so that the premises should be described as they really were, including the portion extending into the county of Morris, and

that after said amendment an execution issued to a master, and on May 17th, 1880, the said fifteen acres were sold to the highest bidder for $500 (that being the highest sum then bid), paid by said Parker, he assigning his bid, and the deed being made to said Phillips and Edwards, as trustees.

And that said Phillips and Edwards, as trustees as aforesaid, gave a mortgage on said fifteen acres to said Parker, as trustee of V. R. Marie, to secure a bond for $3,000 ; that said Parker then received $622.87, mentioned in said deed of trust, and waived all legal claim to the $806.40 mentioned therein, trusting that the sons of C. P. Edwards would desire to pay him.

The defendant denies, upon information, that at the time the fifteen acres were struck off to him by the master they were worth $10,000, but expresses the belief that they were worth $6,000, and were a good security for his mortgage of $3,000, but considered any value beyond that problematical, and he further says that he purchased for the benefit of the persons aforesaid, and denies that any purchase was made for the heirs of Charles P. Edwards, and denies any arrangement to stifle bidding, and says the sale was full, fair, open and *bona fide.* He admits the terms of the trust are correctly set out in the bill, and insists upon the lien of said judgment against the lands of the complainant.

These are the principal or leading facts presented in the bill and answer, which it seems necessary to bring to the mind in order to form a fair judgment of the case. These statements, with slight exceptions, are admitted as truly representing the transactions which placed the respective parties in their present attitude toward each other.

It is very plain that if the judgment, against which the bill is aimed, be allowed to stand against the lands of the complainant, she will be greatly injured, for the amount still due thereon must be over $2,200. Is there any relief for her in equity ?

In 1875 the judgment was canceled of record. Such cancellation had the appearance of having been authorized. Although the cancellation was illegal, there seems to have been nothing on the face of it to charge third parties with notice. In 1876, a

year after the cancellation, the complainant in this suit filed her bill to foreclose a mortgage which had been executed and delivered after the said judgment was obtained, but before its cancellation, which mortgage covered lands on which said judgment was a lien. While the proceedings in that foreclosure suit were pending in behalf of this complainant, and before a final decree was entered, Mr. Parker procured the cancellation of said judgment to be vacated. This vacation took place March 28th, 1879, and the final decree in the foreclosure suit was obtained August 1st, 1879.

While Mr. Parker had the right to remove that cancellation, in my judgment, when he did so, Mrs. Tooker, this complainant, who was then foreclosing, and whose foreclosure proceedings had not ripened to decree, was entitled to notice. It was not right to leave her in ignorance of the altered situation. I cannot but regard this, as to her, as a lien of a new creation. It is true, Mr. Parker, or those claiming under him, by means of the restoration of that judgment, had a lien upon and an interest in the lands of the complainant. But, under the circumstances, it was, as to her, a new lien, of which he or they should have given her notice, and asked to come in as a party to her foreclosure proceedings, or thus have given her an opportunity to make him or them defendants, as she most undoubtedly would have done, and thereby foreclosed their rights against the twenty-one acres. This interest, by virtue of the reinstated judgment, may be likened to an interest acquired pending a litigation. I think the doctrine, so well established, which protects a complainant and those coming in under him against the purchaser of an interest in the subject-matter of the suit pending the controversy, should be applied to the question between these parties.

Mr. Parker had rights under the judgment as against Mrs. Tooker, but he did not choose to exercise those rights in due time. He did not give notice and ask to be made a defendant, or allow the complainant to proceed at her peril after notice, but allowed her to proceed to a final decree and a sale. As between these parties, to me it seems most plain that the fault lies with the defendants.

Again, as I understand the case and the value of the fifteen-acre tract, it was ample security for the amount due on the mortgage and judgment. It was, beyond any question, reasonably worth $6,000, while the amount due on the mortgage was less than $2,800. As the matter stands, I regard it as plain duty not to allow the defendants the advantage which they have acquired without notice to Mrs. Tooker. The defendants should be required to execute releases to Mrs. Tooker, and in case of failure so to do effectually within thirty days after service of a copy of the decree, from infancy or other inability, a decree will be made declaring the said judgment void and inoperative as to the lands first described in the bill of complaint. As I have understood the discussion, no unfair dealing is attributed to any one.

The complainant is entitled to relief.

*Mr. R. W. Parker*, for appellants.

*Mr. John Linn*, for respondent.

The opinion of the court was delivered by

MAGIE, J.

In addition to the facts stated with great particularity and accuracy in the foregoing conclusions of the learned vice-chancellor who heard this cause, the following facts are deserving of consideration :

On July 14th, 1868, when Bispham obtained a judgment on his bond made by Charles P. Edwards, the latter was the owner of the mill-site of fifteen acres, and of another tract of twenty-one acres. The mill-site was mortgaged to Bispham to secure the same bond. Therefore, after July 14th, 1868, Bispham held, to secure the same debt, a mortgage on the mill-site, and a judgment which was a lien on that land, and also on the tract of twenty-one acres.

On September 7th, 1871, Edwards being still the owner of both tracts, conveyed the tract of twenty-one acres to Sloat and Mendon by a deed containing full covenants.

The respondent has become the owner of most of the tract of twenty-one acres by divers mesne conveyances under that title.

The mill-site, though subsequently conveyed away by Edwards, was reconveyed to him, and remained his at his death, when it descended to his heirs-at-law, who are parties to this proceeding. All who acquired any interests therein, acquired them after the conveyance to Sloat and Mendon, and subject to the lien of the Bispham mortgage.

When the Bispham mortgage was foreclosed neither the respondent nor anyone interested in the tract of twenty-one acres was made a party, or notified of the proceeding. At the commencement of that foreclosure the Bispham judgment appeared to be satisfied of record.

Under these circumstances it is obvious that respondent has an equity, which a court of equity must, if possible, give effect to. When the land which she now owns was conveyed by Edwards, the purchasers, and those who subsequently acquired their title, became entitled in equity to have the debt which Edwards owed Bispham first made out of the mill-site, which was mortgaged to secure it, and which remained Edwards's property.

This equity has not been lost by any act or default of respondent, or of those under whom she claims. They have not had an opportunity earlier to invoke it. No notice of the Bispham foreclosure was given to them. There was no reason why they should intervene therein to preserve their equity, for at that time the judgment was apparently satisfied, and no longer a lien on their property. When the satisfaction was vacated, and the judgment re-instated, it was done without any notice to her or them.

Nor is there any obstacle to her relief from any superior equity in the other parties to this controversy. They hold the title of Edwards, and have acquired it with full notice of the lien of the mortgage, and with constructive notice of the facts out of which respondent's equity arose. *Herbert* v. *Mech. B. & L. Assn.,* 2 C. E. Gr. 497.

Respondent is therefore entitled to such relief as will preserve her equitable rights.

The decree below gave her relief by requiring the release of her land from the lien of the judgment. In my view the relief

21

thus accorded her is broader than is justified. It is true that it appears that the debt, at the time of the sale under the Bispham foreclosure, amounted to less than $3,000, and that the mill-site was sold under that foreclosure to the holder of the mortgage and judgment for only $500, and that the answer of the purchaser admits that he *believed* it to be worth at least $6,000. But I do not consider this admission to be either so conclusive of value, or so binding on the parties who have an interest in the property, as to justify a departure from the usual mode of dealing with equities of this sort. That mode is to expose to sale the property primarily liable to the debt, with full opportunity to all parties, including those interested in the property secondarily liable therefor, to bid on it, and so to insure its bringing its full value. But, since the admission indicates that the mill-site is so valuable that its sale will probably satisfy the debt, it will be equitable to afford defendants below an opportunity to avoid the expense of such a sale.

My conclusion is, that the defendants below should have the option of having such a sale made, if they desire, and to that end that the decree should be modified, and should direct that unless the defendants below shall make and deliver the release, which the decree now requires to be made and delivered, within thirty days from service of a copy of the modified decree, then the mill-site comprised in the Bispham mortgage should be resold as prayed for in respondent's bill of complaint.

The appeal was put on grounds involving the whole decree, and did not raise the question of the modification now thought proper to be made. For this reason, I think appellants ought not to be awarded costs in this court.

The decree below was also appealed from because it awarded costs to respondent. But, in that respect, I think the decree was entirely correct. Respondent established an equitable right against defendants, and I can perceive no reason why she should not obtain the costs of the litigation necessary to that end.

I shall vote for modifying the decree in the respects above indicated.

*Decree unanimously reversed.*